**SO ORDERED.**

**SIGNED this 6 day of February, 2018.**

                                            **David M. Warren**
                                            **United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                                              CASE NO. 14-01265-5-DMW

**ROBERT WILLIAM RIPLEY**
**KAREN MARY RIPLEY**
                                                               **CHAPTER 13**
                  **DEBTORS**

## ORDER DENYING MOTION TO INCUR DEBT

This matter comes on to be heard upon the Motion to Allow Debtors to Finance Purchase of Residential Real Property and Fee Application ("Motion") filed by Robert William Ripley ("Mr. Ripley") and Karen Mary Ripley ("Ms. Ripley") (collectively, "Debtors") on November 7, 2017 and the Trustee's Response to Debtor's [sic] Motion to Allow Purchase of Real Property and Fee Application filed by John F. Logan, Esq. ("Trustee"), Chapter 13 trustee, on November 20, 2017. The court conducted a hearing in Raleigh, North Carolina on December 6, 2017 and adjourned the hearing until December 14, 2017 to allow the Trustee to review the Debtors' current financial information. Travis Sasser, Esq. appeared for the Debtors, and the Trustee appeared *pro se* at the December 14, 2017 hearing. Based upon the pleadings, the testimony and other evidence

presented, the arguments of counsel and the case record, the court makes the following findings of fact and conclusions of law:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2. The Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code ("Code") on March 4, 2014 ("Petition Date"). The court appointed the Trustee to fulfill the duties as provided in 11 U.S.C. § 1302.

3. Pursuant to the terms of the Debtors' Chapter 13 plan ("Plan"), confirmed May 30, 2014, the Debtors are required to make sixty monthly payments to the Trustee. If the Debtors complete timely their Plan payments, the Debtors will remit their last Plan payment to the Trustee around March, 2019. According to the Trustee's records, the Debtors are projected to pay a 4.1% dividend to their unsecured creditors, whose allowed claims total $14,552.41.

4. The Debtors currently rent property located in Apex, North Carolina and pay $2,000.00 each month in rent. The Debtors are subject to a one-year lease that ends March 31, 2018. Ms. Ripley testified that the Debtors desire a "more stable" residence than their current rental property. When the Debtors signed their lease, they inquired about a longer term that would equate to a lower monthly payment. Ms. Ripley recalled that the landlord would not reduce the monthly payment, but Ms. Ripley did not indicate that a longer term would not be considered by the landlord.

5. The Debtors are seeking to finance the purchase of a newly built townhome ("Property"). To purchase the Property, the Debtors would need to borrow approximately

$269,000.00.[1] The monthly mortgage payments would total approximately $1,737.00, comprising $1,287.00 in principal and interest, with the remainder of that amount going toward escrowed taxes and homeowners' insurance and mortgage insurance. The Debtors would also be responsible for approximately $180.00 in monthly homeowners' association dues.[2]

6. As of December 14, 2017, the Debtors had paid $5,000.00 toward the purchase of the Property, plus a $1,000.00 design fee to the builder. Of that $6,000.00 total amount, the Debtors used $4,000.00 of their own money and received $2,000.00 as a gift from Ms. Ripley's mother.

7. Mr. Ripley testified that the Debtors would need to bring the amount of $6,700.00 to the contemplated closing on the purchase of the Property.[3] Ms. Ripley testified that the Debtors planned to withdraw $6,000.00 from Mr. Ripley's 401(k) retirement account in order to pay the amount required to close on the purchase of the Property. This early invasion of the 401(k) retirement account would result in substantial taxes and penalties. Mr. Ripley testified that he had approximately $18,000.00 in his retirement account as of December 14, 2017, and Ms. Ripley had less than that amount in her retirement account. Assuming a federal tax rate of 25%, a state tax rate of 5.5% and a 10% penalty, the $6,000.00 withdrawal would cost the Debtors an additional

---

[1] Mr. Ripley provided inconsistent testimony about this amount, twice stating that the total purchase price would be $269,000.00 but also stating the loan amount would be $268,000.00 when presented by counsel with a loan estimate ("Estimate") during his testimony. The court subsequently admitted the Estimate as an exhibit provided by the Trustee at the second hearing on the Motion. The Estimate states the amount financed would be $269,644.00 and contemplates a down payment of approximately $5,000.00. Mr. Ripley testified that the Debtors recently made a payment to the builder seller toward the purchase price, which he stated would lower the loan amount to approximately $268,000.00. It is unclear whether the payment referenced by Mr. Ripley would, in fact, lower the loan amount or if it was instead part of the down payment already factored into the Estimate. These discrepancies, while they cause the court to question Mr. Ripley's understanding of the proposed financial transaction, do not affect the court's ruling.

[2] Although Mr. Ripley testified that monthly payments relating to the Property would total $1,737.00, the Estimate does not appear to include homeowners' association dues in the monthly payment estimate.

[3] Mr. Ripley testified that the Debtors would be paying the amount of $9,000.00 as a down payment toward the total purchase price, but that amount is inconsistent with the down payment reflected on the Estimate. The Estimate states that "estimated cash to close" is $6,712.00. If that amount is accurate, then it appears the Debtors did not intend to make a down payment of $9,000.00, and instead Mr. Ripley may have been confusing the amount required to be paid for closing costs with a portion of the down payment.

3

$2,430.00 in taxes and penalties while undermining their future financial security. Mr. Ripley testified that depending on whether his tax withholdings in 2017 were sufficient to cover the taxes and penalties that would be incurred with the 401(k) withdrawal, he may be forced to enter into a payment plan in 2018 to pay those anticipated taxes and penalties. Of course, that payment plan would require the payment of interest to the Internal Revenue Service on those funds.

8. In conjunction with filing the Motion, the Debtors prepared a budget showing their current monthly income. Mr. Ripley's income is partially commission-based and dependent on sales. Mr. Ripley testified his income has increased since the Petition Date because another salesperson left his company, and instead of hiring a replacement, the company gave one-half of that territory to Mr. Ripley with the balance given to another employee. In addition, Ms. Ripley is working more hours per week than she was on the Petition Date and is earning a higher hourly rate.

9. The Debtors filed the Motion pursuant to the local rule in this district[4] which requires Chapter 13 debtors to obtain court approval prior to incurring "additional debt of $7,500 or more . . . ." E.D.N.C. LBR 4002-1(g)(5). Local Rule 4002-1(g)(5) states that a "debtor must give notice of the application to purchase additional property or to incur additional debt to the chapter 13 trustee, who must respond within fourteen days of receipt of the notice. If no objection is filed, the court may approve the application without a hearing." *Id.*

10. The Debtors assert Local Rule 4002-1(g)(5) is invalid because it places limitations on debtors' post-petition financial activities and abridges debtors' "substantive" rights. The court

---

[4] The Eastern District of North Carolina Local Bankruptcy Rules are promulgated pursuant to Rule 9029 of the Federal Rules of Bankruptcy Procedure, which states that a "district court may authorize the bankruptcy judges of the district, subject to any limitation or condition it may prescribe and the requirements of 83 F.R.Civ.P., to make and amend rules of practice and procedure which are consistent with—but not duplicative of—Acts of Congress and [the Federal Rules of Bankruptcy Procedure] . . . ."

4

disagrees with the Debtors' interpretation of Local Rule 4002-1(g)(5). The Debtors have not identified any Code provision which affirmatively gives the Debtors the "right" to make unfettered credit purchases during the pendency of their Plan.[5] Chapter 13 comes with privileges and obligations. The privileges are that the Debtors are protected from their creditors while they use their disposable income to repay those creditors, in varying percentages from zero to one hundred, with receipt of a discharge at the end of their Plan term. The obligations are that the Debtors abide by and complete the Plan (or deal) they made with those creditors. While under the jurisdiction of this court, the Debtors should not be allowed to undertake actions that would jeopardize those privileges and obligations. The procedure required by Local Rule 4002-1(g)(5) allows the court to oversee Chapter 13 debtors' cases and protects both the likelihood of debtors receiving a meaningful discharge and of creditors being paid through a Chapter 13 plan. *See In re Brown*, 170 B.R. 362, 365 (Bankr. S.D. Ohio 1994) ("If chapter 13 debtors are to be rehabilitated, they must be educated and encouraged to enter into transactions that are in both their long-term and short-term best interests.").

11.     The Debtors also argue Local Rule 4002-1(g)(5) abridges a Chapter 13 trustee's right to approve post-petition claims under 11 U.S.C. § 1305 and generally "conflates and confuses" the requirements of § 1305. Section 1305 limits a post-petition creditor's right to payment through a debtor's plan by requiring the debtor or creditor to seek "prior approval by the trustee of the debtor's incurring the obligation [if] practicable." 11 U.S.C. § 1305. The Debtors

---

[5] Some courts, after examining the language of 11 U.S.C. § 1304 requiring a Chapter 13 debtor engaged in business to comply with 11 U.S.C. § 364 when obtaining post-petition credit, have found "a debtor [not engaged in business] has the ability to obtain post-petition debt without court authorization." *In re Loden*, 572 B.R. 211, 215 (Bankr. W.D. Ark. 2017) (citing *In re Fields*, 551 B.R. 424, 427 (Bankr. D. Minn. 2016)); *but see In re Ward*, 546 B.R. 667, 678 (Bankr. N.D. Tex. 2016) (examining the language of 11 U.S.C. §§ 1304 and 1305 and stating that "arguably, there is nothing that requires court approval [for a debtor not engaged in business to incur debt]. However, incurrence of significant postpetition debt is an action that absolutely could bear on the performance of the plan. It could absolutely impact the debtor's rehabilitation efforts. Thus, this court will require court approval.").

assert that § 1305 excludes a requirement for obtaining approval by the court for a post-petition claim; therefore, Local Rule 4002-1(g)(5) infringes on the trustee's powers by also requiring court approval of certain post-petition debts.  The Trustee has not expressed any concern with the perceived limitation imposed by Local Rule 4002-1(g)(5) upon § 1305.  Section 1305 also is not relevant to the Motion because the Debtors are not seeking to incur a consumer debt "for property or services necessary for the [Debtors'] performance under the plan," and the prospective lender is not seeking to be paid through the Plan. *See* 11 U.S.C. § 1305(a)(2).  Nevertheless, the court will address the Debtors' argument.

12.	Section 1305 imposes requirements upon creditors seeking to be included in the distribution under a Chapter 13 plan and debtors seeking to include post-petition debt in a plan's distribution.  It confers to the trustee the responsibility to evaluate whether payment of the debt through the plan will prejudice other creditors.  Although theoretically, a trustee may approve of a debtor incurring an obligation under § 1305, and the court subsequently may disapprove of the debtor incurring that obligation under Local Rule 4002-1(g)(5), the trustee's "rights" are not abridged by the local rule, and the local rule does not infringe upon § 1305.  The purpose of the delegation within § 1305 is to ensure the trustee evaluates the proposed post-petition debt to avoid potential unfair prejudice to pre-petition creditors. *See Brown*, 170 B.R. at 364 (citing § 1305 and that court's local rule[6] governing post-petition extensions of credit and stating that "[a]s

---

[6] Based on the court's review of similar local rules in other districts, it appears many other districts relate their local rule governing the incurrence of post-petition debt to Rule 4001(c) of the Federal Rules of Bankruptcy Procedure.  Rule 4001(c) states that "[a] motion for authority to obtain credit shall be made in accordance with Rule 9014 and shall be accompanied by a copy of the credit agreement and a proposed form of order."  In its May 22, 2017 Memorandum to the Committee on Rules of Practice and Procedure, the Advisory Committee on Bankruptcy Rules recommended that Rule 4001(c) be amended to include "Rule 4001(c)(4) [which would make] subdivision (c) inapplicable to chapter 13 cases."  The Report states that "Members [of the Advisory Committee on Bankruptcy Rules] emphasized that a decision to carve out chapter 13 cases did not speak to the underlying substantive issue of whether the Bankruptcy Code requires or permits a chapter 13 debtor not engaged in business to request approval of postpetition credit . . . ."  This court, as well as the United States Bankruptcy Court for the Western District of North

postpetition earnings are the backbone of funding for the confirmed plan, subsequent credit transactions are subject to scrutiny by the Trustee and the Court."). Local Rule 4002-1(g)(5) serves a very similar purpose to § 1305 and, in addition, ensures debtors emerge after a Chapter 13 discharge with a meaningful "fresh start." In other words, Local Rule 4002-1(g)(5) accomplishes a broader objective than § 1305, but the purposes behind both are complementary. Local Rule 4002-1(g)(5) is not in conflict with § 1305.

13.     The Debtors assert that in light of their increased income and the projected mortgage payment which would be slightly lower than their current monthly rent amount, the Debtors should be permitted to finance the purchase of the Property. In support of this position, the Debtors argue that the court's analysis of the Motion should be limited to a determination whether the contemplated transaction will impact the Debtors' ability to perform under the Plan. The effect of the contemplated mortgage payment and the potential to finance the taxes and penalties resulting from the 401(k) withdrawal on the Debtors' monthly budget is only one factor for the court to consider. The court also should determine whether the contemplated transaction is generally in the Debtors' best interests. *See In re Ward*, 546 B.R. 667, 679 (Bankr. N.D. Tex. 2016) (comparing the court's review of a motion to incur debt with the standard used for evaluating a proposed borrowing transaction under 11 U.S.C. § 364, including whether it is in the best interests of the debtor and the estate). The financial repercussions of incurring a debt with repayment terms lasting as long as thirty years is barely comparable to the monetary commitment involved in a lease agreement for residential real property. If the court were to allow the Motion, the Debtors would emerge from their Chapter 13 case with over $200,000.00 in debt and related personal liability that would otherwise not exist. Further, allowing the Motion would require the

---

Carolina, relates its local rule governing post-petition credit to Rule 4002 of the Federal Rules of Bankruptcy Procedure, "Duties of Debtor," rather than to Rule 4001(c).

court's complicity for the withdrawal of money from Mr. Ripley's 401(k) retirement account to comprise a portion of the down payment. The court cannot approve of transactions with such hazardous financial consequences. It appears the Debtors have learned little from their required pre-petition credit counseling.

14. Also, even though the purchase of the Property may not negatively affect the Debtors' monthly expenses, ownership of the Property would not convey any benefit to the Debtors' creditors beyond the prospective minor increase in monthly disposable income, regardless of any potential income tax savings. The Motion is distinguishable from cases in which the court has allowed a debtor to incur debt to purchase a vehicle to travel to and from work. In those cases, the debtors *need* the vehicle to generate income. The Debtors here simply *want* something to which they feel entitled.

15. The Debtors assert they want to purchase the Property in order to achieve a sense of "stability" for their family. The Debtors did not articulate why their current home was not "stable," especially given the lack of inquiry into a long-term lease, notwithstanding a discount in monthly payment. Without a more suitable explanation, this reasoning is incomprehensible and insufficient to support the Motion.

16. Provisions elsewhere in the Code serve as guidance for the expectations the United States Congress has of debtors and the entire bankruptcy process. For example, Congress added 11 U.S.C. § 1328(g)(1) to the Code through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Section 1328(g)(1) requires as a prerequisite to discharge the completion of an instructional course about financial management. The addition of § 1328(g)(1) to the Code evidences Congress's desire that debtors improve their financial acumen before their debts are

discharged and the debtors emerge from the supervision of the bankruptcy court. LBR 4002-1(g)(5) was promulgated to accomplish similar objectives.

17. In the matter before the court, the Debtors have not shown a sufficient basis for the court to approve the requested loan, especially in view of the substantial damage to the retirement funds primarily and most importantly for the Debtors' later years. The desire for immediate gratification and the lack of financial foresight may be reasons why the Debtors find themselves in this court; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. The Motion be, and hereby is, denied; and

2. Notwithstanding the court's denial of the Motion, the request within the Motion that Debtors' counsel be allowed a presumptive non-base fee of $200.00 to be paid through the Plan as an administrative priority claim be, and hereby is, allowed.

END OF DOCUMENT