**SO ORDERED.**

**SIGNED this 6 day of February, 2018.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                                                                  CASE NO. 14-01265-5-DMW

ROBERT WILLIAM RIPLEY
KAREN MARY RIPLEY
                                                                                                CHAPTER 13
          DEBTORS

ORDER ALLOWING MOTION TO MODIFY PLAN

This matter comes on to be heard upon the Trustee's Motion to Modify Chapter 13 Plan ("Motion to Modify") filed by John F. Logan, Esq. ("Trustee"), Chapter 13 trustee, on December 18, 2017 and the Debtors' Response to Chapter 13 Trustee's Motion to Modify ("Response") filed by Robert William Ripley ("Mr. Ripley") and Karen Mary Ripley ("Ms. Ripley") (collectively, "Debtors") on January 8, 2018.  The court conducted a hearing in Raleigh, North Carolina on January 10, 2018.  Michael B. Burnett, Esq. appeared for the Trustee, and Travis Sasser, Esq. appeared for the Debtors.  Based upon the pleadings, the testimony and other evidence presented, the arguments of counsel and the case record, including testimony from prior, unrelated hearings conducted in this case, the court makes the following findings of fact and conclusions of law:

Background

1.     The Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code ("Code") on March 4, 2014 ("Petition Date"). The court appointed the Trustee to fulfill the duties as provided in 11 U.S.C. § 1302.

2.     The Debtors' Schedule I, filed March 18, 2014, listed Mr. Ripley's monthly gross income as $4,333.33 (or $52,000.00 annually) and Ms. Ripley's monthly gross income as $1,225.47 (or $14,705.64 annually). Schedule J stated total monthly expenses of $4,616.26 and reflected net income of $88.02 per month as of the Petition Date.

3.     The Trustee filed a Motion ("Motion for Confirmation") seeking confirmation of a Chapter 13 plan ("Plan") in this case on April 28, 2014. Under the terms of the proposed Plan, the Debtors would make sixty monthly payments to the Trustee in the amount of $88.00, based on the Debtors' monthly net income.[1] The Motion for Confirmation stated the Plan "shall not end prior to completion of the [sixty month] applicable commitment period [under 11 U.S.C. § 1325(b)(4)] unless all allowed general unsecured claims have been paid in full." In the absence of any objection to the Motion for Confirmation, the court entered an Order allowing the Motion for Confirmation and confirming the Plan on May 30, 2014. The Plan currently requires monthly payments to the Trustee in the amount of $135.00 for the remainder of the sixty month applicable commitment period ending March, 2019, based on minor adjustments to account for attorney fees

---

[1] Section 1325 of the Code requires that "[i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). The Debtors are above-median income debtors, and together, §§ 1325(b)(2) and (3) dictated that the Debtors' expenses should be calculated pursuant to 11 U.S.C. §§ 707(b)(2)(A) and (B) to determine the Debtors' disposable income. The Debtors' Form B22C, used to calculate their disposable income in accordance with §§ 1325(b)(2) and (3), states the Debtors' monthly disposable income under § 1325(b)(2) is negative $901.00. The Debtors proposed in their Plan filed March 18, 2014 to commit their actual monthly net income as reflected on Schedules I and J to be paid to the Trustee each month, and the Trustee sought confirmation of those terms.

2

incurred post-petition. According to the Trustee's records, the Debtors are projected to pay a 4.1% dividend to their unsecured creditors, whose allowed claims total $14,552.41.

4. On November 7, 2017, the Debtors filed a motion seeking the court's permission to incur debt of approximately $269,000.00 to finance the purchase of a newly built townhome. In conjunction with filing that motion, the Debtors prepared updated Schedules I and J ("Updated Schedules") to show their current monthly income and expenses and provided those Updated Schedules to the Trustee. The Debtors have not filed the Updated Schedules with the court, but the Trustee attached them to the Motion to Modify.

5. The Updated Schedules include a declaration by which the Debtors declared under penalty of perjury that the Updated Schedules were true and correct to the best of the Debtors' knowledge. The Updated Schedules state Mr. Ripley's monthly gross income is $6,500.00 (or $78,000.00 annually),[2] and Ms. Ripley's monthly gross income is $2,312.27 (or $27,747.24 annually). The Debtors' current monthly expenses listed on the Updated Schedules are $4,674.00, and monthly net income is $1,381.92. The Updated Schedules note that the Debtors' monthly health insurance expenses will increase by $150.00 in 2018, but the Debtors will also complete monthly payments of $220.00 on a secured vehicle loan in early 2018.

6. The Updated Schedules reflect that the Debtors' combined gross annual income has increased from $66,705.64 to $105,747.24. That change is a 58.5%[3] increase in the Debtors' gross income since the Petition Date.

---

[2] Mr. Ripley testified that his pay stub, presumably from his final paycheck in 2017, showed he made "a little under" $70,000.00 in 2017. The court has not been provided with any other evidence of the Debtors' income other than the information provided on the Updated Schedules. The court notes that during prior testimony given at a hearing on the Debtors' motion to incur debt, Mr. Ripley testified that a portion of his income comes directly from the manufacturers of the products he sells and is not paid by his employer. As a result, Mr. Ripley's paystub, from which he based his estimate of his annual salary at the hearing, may not reflect his total income for 2017.

[3] The Debtors' Schedule I filed at the beginning of this case indicates Mr. Ripley had a part-time job earning the net amount of $250.00 per month "after garnishment/taxes." The Debtors did not provide the gross amount for that income, but if the net amount of $250.00 is added to the Debtors' gross monthly income of $5,558.80 as of the

3

7.      Mr. Ripley's income is partially commission-based and dependent on his sales performance. Mr. Ripley's income has increased since the Petition Date because another salesperson left the company, and instead of hiring a replacement, the company gave one-half of that person's territory to Mr. Ripley with the other half going to another employee.[4] Ms. Ripley is working more hours per week than she was on the Petition Date and is earning a higher hourly rate.

8.      Mr. Ripley testified that on Saturday, December 16, 2017, the Debtors mailed a check dated December 15, 2017 in the amount of $2,025.00 ("Payment") to the Trustee, representing the remainder of monthly payments in the amount of $135.00 required by the Plan. Mr. Burnett testified that the Payment likely was received by the Trustee on the morning of Monday, December 18, 2017, before the Trustee filed the Motion to Modify that afternoon, but neither Mr. Burnett nor the Trustee was aware of the Payment before filing the Motion to Modify. The Trustee's office became aware of the Payment on the afternoon of December 18, 2017 but did not begin processing the payment until the next day. Mr. Burnett explained that because the Payment was far in excess of the Debtors' monthly Plan payment, pursuant to procedural guidelines within the Trustee's office, the operations manager was required to review the Payment before processing. The Trustee's operations manager was not in the office on December 18, 2017 but reviewed the Payment on December 19, 2017. The Trustee's office then processed the Payment, which included a staff member noting the check in the Trustee's records for the Debtors' case on December 19, 2017. Mr. Burnett explained that after recording the check in the Trustee's

---

Petition Date, the Debtors experienced a 51.7%, rather than 58.5%, increase in income since the Petition Date. That difference would not affect the court's analysis, even if the Trustee had included Mr. Ripley's part-time income in his calculations.

[4] Mr. Ripley discussed the increase in his sales territory during testimony at a previous hearing on the Debtors' motion to incur debt.

4

records, the staff member would have sent the check to be negotiated and deposited with the Trustee's banking institution, SunTrust Bank. To Mr. Burnett's knowledge, the Payment was honored by the Debtors' banking institution, Wells Fargo Bank, and was successfully transferred to the Trustee.

9. The Motion to Modify seeks modification of the Plan pursuant to 11 U.S.C. § 1329. The Debtors assert the Motion to Modify was not filed timely because the Trustee filed the Motion to Modify after the Debtors paid the Plan in full, and even if it the Motion to Modify is timely, the Trustee has not carried his burden to prove modification is permitted or that the proposed modification is feasible.

## Jurisdiction

10. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.

11. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

## Discussion

12. A confirmed Chapter 13 plan may be modified consistent with the provisions of 11 U.S.C. § 1329. Section 1329(a)(1) states as follows:

> At any time after confirmation of the plan **but before the completion of payments under such plan**, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to [*inter alia*,] increase or reduce the amount of payments on claims of a particular class provided for by the plan.

11 U.S.C. § 1329(a)(1) (emphasis added).

13. The Debtors assert they completed payments under the Plan prior to the filing of the Motion to Modify by the Trustee, and the Motion to Modify is not timely. The court disagrees

5

for two reasons. First, although the Trustee received the Payment on December 18, 2017, the Payment was not honored by the Debtors' banking institution on December, 18, 2017. Even if the Trustee's office had negotiated the Payment on December 18, 2017, the funds likely would not have transferred to the Trustee's account that same day. Even if the Trustee and the Debtors had accounts at the same financial institution, it is highly unlikely that funds from the Debtors' account would have been transferred immediately to the Trustee's account. The court agrees with other courts that have determined § 1329 refers to completion of payments *to the Chapter 13 trustee* and not from the trustee to creditors;[5] however, completion of payments to a trustee only occurs upon completion of the transfer of a debtor's funds into the trustee's account.[6]

14.    Even if the Payment was "complete" at the time the Trustee's office received the check, the Debtors have not completed payments under the Plan. Some courts, in determining whether modification under § 1329(a) is barred, have considered payments complete once a debtor pays the entire plan base (the monthly payment multiplied by the number of payments) to the trustee; however, those courts issued their rulings under the assumption that the applicable commitment period was a monetary – rather than temporal – requirement allowing pre-payment of a plan base without payment in full of unsecured creditors, in contradiction with the Fourth Circuit's ruling in *Pliler v. Stearns*, 747 F.3d 260, 266 (4th Cir. 2014). *See, e.g.*, *In re Ruth*, 505 B.R. 804, 817 (Bankr. S.D. Tex. 2014) (citing *In re Meza*, 467 F.3d 874 (5th Cir. 2006) and *In re Ezzell*, 438 B.R. 108 (Bankr. S.D. Tex. 2010)); *see also In re Phelps*, 149 B.R. 534, 537 (Bankr.

---

[5] *See In re Ezzell*, 438 B.R. 108, 115-16 (Bankr. S.D. Tex. 2010) (finding that a plan could not be modified after the trustee received funds but before the trustee distributed those funds to the creditor).

[6] The court notes that if a debtor were to establish bad faith on the part of the trustee in processing efficiently a payment, that may affect the analysis of when payments are completed; however, that issue is not present in this case.

N.D. Ill. 1993) (finding that "'completion of payments' [under § 1329(a)] occurs when the debtor has paid the percentage owed to each class of creditors as provided for in the plan.").

15. The Plan "shall not end prior to completion of the [sixty month] applicable commitment period unless all allowed general unsecured claims have been paid in full," and the Debtors have not paid their unsecured creditors in full. The Debtors have completed the monthly payments specified under the terms of the Plan, as adjusted, but they have not completed payments under the Plan. *See Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 544 (9th Cir. BAP 2007) (stating that "part of the statutory bargain inherent in chapter 13 is that the debtors must, for the prescribed life of the plan, run the gauntlet of exposure to trustee or creditor requests to increase payments" and ultimately ruling "[t]he debtor cannot short-circuit that exposure merely by prepayment [of the plan base], but rather must obtain a § 1329 plan modification [to shorten the life of the plan].").

16. This conclusion is supported by a reading of § 1328(a) of the Code, which provides that the court shall (with certain exceptions) grant the debtor a discharge "after completion by the debtor of all payments under the plan . . . ." 11 U.S.C. § 1328(a). The Debtors are not eligible for a discharge until either they make their monthly payments through the end of the applicable commitment period or they pay all general unsecured claims in full. 11 U.S.C § 1325(b)(4); *Pliler*, 747 F.3d at 266. The standard for the completion of payments should not vary between §§ 1328(a) and 1329(a), especially in light of the language in the Motion for Confirmation stating the Plan "shall not end prior to completion of the [sixty month] applicable commitment period unless all allowed general unsecured claims have been paid in full." *See Fridley*, 380 B.R. at 545 ("Since the debtors' plan would not pay all allowed unsecured claims in full and since they committed

themselves to thirty-six months, their prepayment does not 'complete' their plan for purposes of §§ 1328(a) or 1329.").

17. The court finds the Motion to Modify was filed timely and should be evaluated on its merits. In the Fourth Circuit, a "party seeking modification [must] demonstrate[] that the debtor experienced a 'substantial' and 'unanticipated' post-confirmation change in his financial condition." *Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 149 (4th Cir. 2007) (citing *In re Arnold*, 869 F.2d 240, 243 (4th Cir. 1989)). This standard is implemented to preserve the doctrine of *res judicata* as it relates to the court's prior Order confirming the Plan.

18. The Debtors have experienced at least a 50% increase in their gross income in less than four years. The court finds this amount to be substantial, and this determination appears reasonable based on an examination of relevant cases in the Fourth Circuit. *See, e.g., In re Swain*, 509 B.R. 22, 27 (Bankr. E.D. Va. 2014) (finding an increase in income of "nearly 50%" since plan confirmation to be substantial); *In re Matusak*, No. 14-02032-5-SWH, 2017 Bankr. LEXIS 3166, at *10 (Bankr. E.D.N.C. Sept. 19, 2017) (finding a post-petition increase of "approximately 73%" to be substantial).

19. In determining whether a change is unanticipated, courts should examine "whether a debtor's altered financial circumstances could have been *reasonably anticipated* at the time of confirmation by the parties seeking modification." *Arnold*, 869 F.2d at 243 (emphasis in original) (quoting *In re Fitak*, 92 B.R. 243, 250 (Bankr. S.D. Ohio 1988)). The Debtors assert their increase in income was not unanticipated because Mr. Ripley's income as a salesman varies; however, Mr. Ripley testified at the hearing on the Debtors' motion to incur debt that his income has increased, at least in part, due to the expansion of his sales territory. When called as a witness by the Debtors, Mr. Burnett testified that the notes taken by the Trustee's office during the meeting of creditors

conducted at the outset of this case do not indicate that the Debtors made any statements indicating they expected such a substantial increase in their income over the Plan term. The Debtors have presented no evidence to suggest the increase in Mr. Ripley's sales territory – or the over 50% increase in combined income generally – was anticipated by the Debtors at the outset of this case or reasonably could have been anticipated by the Trustee at the time of confirmation. The court is aware that commission-based income fluctuates, but the Debtors cannot use the structure of Mr. Ripley's income to shield the Plan from modification. The debtor in *Arnold* had income that was dependent on commissions, but despite the relative unpredictability of his income, the Fourth Circuit found that the increase from a projected $80,000.00 to nearly $200,000.00 was unanticipated. 869 F.2d at 243. The Debtors have experienced a substantial and unanticipated change in their financial circumstances.

20.     The Motion to Modify seeks modification of the Plan to increase the amount of payments to the unsecured class, a permissible reason for modification pursuant to 11 U.S.C. § 1329(a)(1). The Trustee bases the proposed increase in payments off the figures provided by the Debtors in the Updated Schedules. The Debtors assert that because they are above-median income debtors, a determination of the amount that the Debtors are able to pay should be governed by 11 U.S.C. §§ 1325(b)(2) and (3). The Debtors assert that if they were to update their Form B22C, which is used to calculate above-median income debtors' disposable income in accordance with § 1325(b)(3) by using 11 U.S.C. §§ 707(b)(2)(A) and (B) to estimate expenses, the Form would reflect negative monthly disposable income just as it did at the outset of the case. The Debtors assert they should not be punished for their perceived frugality because their actual income and expenses, reflected on the Updated Schedules, show they have monthly disposable income.

21. Courts in the Fourth Circuit have addressed the Debtors' argument, and the court finds the reasoning of those courts persuasive. Citing the Fourth Circuit's *Murphy* and *Arnold* opinions setting standards for plan modifications, the United States Bankruptcy Court for the Eastern District of Virginia observed that

> *Murphy* and its predecessor, *Arnold*, suggest that it is not likely that the Fourth Circuit would apply § 1325(b) to a proposed plan modification. A review of *Hamilton v. Lanning*, 560 U.S. 505, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010), leads to the conclusion that the Supreme Court would also recognize the impracticality of applying the strict standards imposed by § 1325(b) to plan modifications after [The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005], particularly given the absence of a clear intent on the part of Congress. In light of this and after a thorough review of current case law, the Court finds that § 1325(b) does not apply to motions to modify a chapter 13 plan under § 1329, and payments under a modified plan are not required to be determined according to the terms of § 1325(b)(2) and (3).

*In re Swain*, 509 B.R. 22, 32 (Bankr. E.D. Va. 2014) (citing *Murphy*, 474 F.3d 143 and *Arnold*, 869 F.2d 240).

22. The United States Bankruptcy Court for the Western District of North Carolina similarly found that a "debtor should compare Schedules I and J to determine disposable income in the context of a § 1329 post-confirmation modification and is not bound by the Form B22C calculations required by § 1325(b)(2) and (3)." *In re White*, 411 B.R. 268, 275 (Bankr. W.D.N.C. 2008); *see also In re McAllister*, 510 B.R. 409, 417 n.9 and n.10 (Bankr. N.D. Ga. 2014) (listing cases agreeing and disagreeing with the contention that § 1325(b) is inapplicable to motions to modify a chapter 13 plan under § 1329). The Debtors' actual income and expenses, as stated on the Updated Schedules, should be used to determine a modified plan payment under § 1329(a). An updated Form B22C would have little relevance to modification because it reflects a snapshot in time of a debtor's income during the six months prior to the calculation and uses, *inter alia*, national and local standards, rather than actual amounts, to estimate expenses.

23. The Trustee proposes that the monthly Plan payments be increased to $1,381.00 (the Debtors' net monthly income according to the Updated Schedules) for the final fifteen months of the Plan term beginning January, 2018, or until all allowed claims have been paid in full. In the alternative, the Trustee proposes that the monthly Plan payments be increased to $1,125.00 for the final fifteen months of the Plan term beginning January, 2018, as that alternative lower monthly amount should be sufficient to pay all allowed claims in full by March, 2019.

24. Section 1329(b) requires that a modification under § 1329(a) meet the requirements of 11 U.S.C. §§ 1322(a), 1322(b), 1323(c) and 1325(a). 11 U.S.C. § 1329(b)(1). Pursuant to § 1325(a)(6), therefore, the court must determine that the proposed modification is feasible. *See* 11 U.S.C. § 1325(a)(6). The Trustee asserts the proposed modification is feasible because the payment is based on the Updated Schedules which were signed by the Debtors under penalty of perjury. Mr. Ripley testified about the variable nature of his income, but the Debtors presented no evidence suggesting that Mr. Ripley's territory will be reduced in the future. Accounting for the possibility that Mr. Ripley's sales may decline to a certain extent in the future, the court finds that the Trustee's alternative proposed modification is appropriate and feasible.

25. The proposed modification meets the remaining requirements stated in § 1329(b), and the Plan should be modified to require monthly payments in the amount of $1,125.00 for the final fifteen months of the Plan term, beginning January, 2018. The Trustee's figures do not account for the Payment of $2,025.00 made by the Debtors in December, 2017, and the Payment may be credited toward the payments required under the modified Plan; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. The Motion to Modify be, and hereby is, allowed; and

11

2. The Debtors' Plan is modified to require payments in the amount of $88.00 per month for thirty-one months, followed by payments in the amount of $111.00 per month for seven months, followed by payments in the amount of $135.00 per month for seven months (through December 2017), followed by payments in the amount of $1,125.00 per month for fifteen months through March, 2019, or until all allowed claims are paid in full, whichever occurs sooner.

END OF DOCUMENT